## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KARMEL DAVIS AND ASSOCIATES, ATTORNEYS-AT-LAW, LLC, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | DEMAND FOR JURY TRIAL |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC. and HARTFORD CASUALTY INSURANCE COMPANY, | |
| Defendants. | |

Plaintiff Karmel Davis and Associates, Attorneys-At-Law, LLC (a/k/a The Law Office of Karmel S. Davis) ("Plaintiff" or "KSD") brings this case, on behalf of itself and all others similarly situated, against Defendant The Hartford Financial Services Group, Inc. and Defendant Hartford Casualty Insurance Company (collectively, "Defendants") and alleges as follows:

### NATURE OF THE ACTION

1.     KSD is a law firm that focuses primarily on bankruptcy litigation.

2.     Like many legal practices in Georgia, KSD was forced to significantly curtail its legal practice due to COVID-19 (also known as the "Coronavirus," the "novel Coronavirus," or "SARS-CoV-2"), and the Executive Orders issued by the Governor of Georgia.

1

3.      KSD sought to protect itself – and believed that it had protected itself – in the event that its operations were suspended or reduced for reasons outside of its control beyond just damage to the physical premises (such as fire), by purchasing an "all-risk" property Spectrum Business Owner's Policy through Defendants (the "Special Property Coverage Form"). *See* Exhibit A. An "all-risk" property policy provides broad coverage for losses resulting from any cause unless expressly excluded.

4.      Among other coverages, the Special Property Coverage Form (including the "Super Stretch" endorsement) specifically includes coverage for: a) Business Income for twelve months of actual loss sustained; b) Extended Business Income for up to 90 days; c) $50,000 in coverage for Business Income from Dependent Properties; and d) Coverage for Action of Civil Authority for thirty (30) days.

5.      The Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority coverages purchased by Plaintiff do not include, and are not subject to, *any exclusion for losses caused by viruses or pandemics*. Had Defendants, as the drafters of the policy, wanted to exclude the risks of a virus or a pandemic, and related issues, like closure orders and social distancing,

they could easily have done so in plain text (without trying to retroactively rewrite their policies).

6.      Notwithstanding that Plaintiff had long paid for coverage, when Plaintiff suffered an actual loss of Business Income as a result of a covered cause of loss, Defendants wrongfully – and in direct contravention of the policy – denied Plaintiff's insurance claim. *See* Exhibit B.

7.      Plaintiff is not alone. Defendants have systematically refused to pay all their insureds under their Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority coverages for losses suffered due to COVID-19 (and related civil authority orders), regardless of whether the implicated insurance policy has a virus exclusion or not.

## **PARTIES**

8.      Plaintiff Karmel Davis and Associates, Attorneys-At-Law, LLC (a/k/a The Law Office of Karmel S. Davis) is a Georgia company with its principal place of business in Douglasville, Georgia.

9.      Defendant The Hartford Financial Services Group, Inc. ("The Hartford") is a Delaware company with its principal place of business in Hartford, Connecticut. The Hartford is a financial holding company for a group of insurance and non-insurance subsidiaries.

10.    Defendant Hartford Casualty Insurance Company ("Hartford Casualty") is an Indiana company with its principal place of business in Hartford, Connecticut. Hartford Casualty is a wholly owned subsidiary of The Hartford. At all relevant times, Hartford Casualty sold and issued insurance policies in the state of Georgia, including, without limitation, to KSD.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because Plaintiff, as well as other members of the Classes (as defined below), and Defendants are citizens of different states, and because: (a) the Classes consist of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to Plaintiff's claims.

12.    This Court has personal jurisdiction over Defendants, because a substantial portion the alleged wrongdoing occurred in the state of Georgia, and Defendants have sufficient contacts with the state of Georgia.

13.    Venue is proper in this District under 28 U.S.C. § 1391(b)(3) because a substantial portion of the acts and conduct giving rise to the claims occurred within the District.

## FACTUAL BACKGROUND

14.    Plaintiff has had a Spectrum Business Owner's Policy through Defendants since 2010, and currently pays an annual premium of $460.00 to Defendants, who issued to Plaintiff a renewal of Policy No. 45 SBA UT1411 DV, for the annual period beginning May 23, 2020. The renewal is the same insurance policy as Plaintiff had for the time period before May 23, 2020. Plaintiff performed all its obligations under the policy, including the payment of premiums. The Covered Property is 3379 Hwy 5, STE A-AA, Douglasville, GA 30135.

15.    Some insurance policies cover specific and identified risks, such as hurricanes or fires. However, most property policies, including those sold by Defendants, are "all-risk" policies. These types of policies cover _all_ risks of loss, and only exclude narrow and specifically enumerated risks.

16.    In the Special Property Coverage Form (the policy issued to Plaintiff), Defendants agreed to pay "for direct physical loss of or physical damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss." _See_ Exhibit A, Special Property Coverage Form, at A.

17.    A Covered Cause of Loss is defined as all "RISKS OF DIRECT PHYSICAL LOSS" except those that are expressly and specifically listed in the Limitations or Exclusions sections of the policy. _See Id._, at A.3.

18.    Losses due to COVID-19 and the Shelter Order (defined below) are a Covered Cause of Loss under Defendants' policies with the Special Property Coverage Form because they constitute "RISKS OF DIRECT PHYSICAL LOSS" and are not otherwise excluded.

19.    In the Special Property Coverage Form, apart from general coverage, as part of additional coverages, Defendants agreed to pay for Plaintiff's actual loss of Business Income sustained due to the suspension (partial slowdown or complete cessation) of Plaintiff's operations caused by direct physical loss of **_or_** physical damage to property. Specifically, the Policy provides:



*See* Exhibit A, Special Property Coverage Form, at A.5.o.

20.    Defendants also agree to provide Extended Business Income coverage, which provides that where "the necessary suspension of…'operations' produces a

Business Income loss payable under th[e] policy" Defendants must also pay for up to 90 days of additional actual loss of Business Income even after operations resume. *See* Exhibit A, Special Property Coverage Form, at A.5.r.; Super Stretch Endorsement at C.4.

21.    Extended Business Income coverage is meant to provide coverage for lost Business Income during the time it takes a business to bounce back from the suspension of its business operations.

22.    Defendants also have agreed to provide "Business Income from Dependent Properties" coverage. *See* Exhibit A, Special Property Coverage Form, at A.5.s.; Super Stretch Endorsement at C.3; Business Income from Dependent Properties, Form SS 04 78 12 17.

23.    Under this coverage Defendants agree to "pay for the actual loss of Business Income [sustained] due to direct physical loss or physical damage at the premises of a Dependent Property caused by or resulting from a Covered Cause of Loss." *Id.*

24.    Dependent properties are:





25.    The Special Property Coverage Form also includes Civil Authority coverage, under which Defendants agreed to pay for the actual loss of Business Income sustained when access to the scheduled premises is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area. *See* Exhibit A, Special Property Coverage Form, at A.5.q ("This insurance is extended to apply to the actual loss of Business Income you sustain when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises'").

26.    As explained below, the proliferation of COVID-19 throughout the State of Georgia and the related Shelter Order issued by Georgia civil authorities

constitute a Covered Cause of Loss triggering the Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority provisions of the insurance coverage.

### A. *Covered Cause of Loss*

### 1. <u>COVID-19</u>

27.    On January 30, 2020, the World Health Organization ("WHO") declared the COVID-19 outbreak a "Public Health Emergency of International Concern."[1] Later, on March 11, 2020, the WHO declared COVID-19 a global health pandemic. On March 13, 2020, President Trump declared a national emergency in the face of a growing public health and economic crisis due to the COVID-19 global pandemic.

28.    In Georgia alone, there have been over 38,855 confirmed cases of COVID-19, 7,076 hospitalizations, and approximately 1,675 related deaths.[2]

29.    In Douglas County, in which Douglasville is located, there have been over 445 confirmed cases of COVID-19, and at least 15 deaths.[3]

---

[1] https://www.who.int/news-room/detail/30-01-2020-statement-on-the-second-meeting-of-the-international-health-regulations-(2005)-emergency-committee-regarding-the-outbreak-of-novel-coronavirus-(2019-ncov) (last visited May 20, 2020).

[2] https://dph.georgia.gov/covid-19-daily-status-report(last visited May 20, 2020).

[3] *Id.*

30.    According to published research, the virus that causes COVID-19 remains stable and transmittable for up to three hours in aerosols, up to four hours on copper, up to twenty-four hours on cardboard, and up to two to three days on plastic and stainless steel.[4]

### 2.    The Shelter Order

31.    The presence and physical spread of this deadly virus has caused civil authorities, including civil authorities with jurisdiction over Plaintiff's business, to issue orders requiring the suspension of businesses to slow down the spread of the virus. Nearly every state in the country has or had an order restricting the operation of non-essential businesses and related stay at home orders.

32.    At the peak "the number of Americans under instructions to stay at home has persisted at an astonishing level…accounting for a stunning 95 percent of the population." *See* https://www.nytimes.com/interactive/2020/us/coronavirus-stay-at-home-order.html.

33.    On March 14, 2020, Georgia Governor Brian P. Kemp issued an Executive Order declaring a public Health State of Emergency in Georgia, and on April 2, 2020, Governor Kemp issued a statewide Shelter in Place Executive Order

---

[4] https://www.nih.gov/news-events/nih-research-matters/study-suggests-new-coronavirus-may-remain-surfaces-days (last visited May 20, 2020).

("Shelter Order").[5] The Shelter Order recited that the "Georgia Department of Public Health has determined that COVID-19 is spreading throughout communities, requiring the implementation of certain restrictions to limit the spread."

34.    The Shelter Order mandated, among other things, that "all residents and visitors of the State of Georgia are required to shelter in place within their homes or places of residence, meaning remaining in their place of residence and taking every possible precaution to limit social interaction to prevent the spread or infection of COVID-19 to themselves or any other person…."

35.    In addition to the Shelter Order, the United States Bankruptcy Court, Northern District of Georgia has issued numerous orders altering its court operations because of the state of emergency surrounding COVID-19 and the Shelter Order ("Bankruptcy Court Orders"). These Bankruptcy Court Orders altered operations including the closure of the Rome division courthouse, the postponement (closure) of § 341 meetings of creditors scheduled in all bankruptcy cases from March 16, 2020 through Friday April 10, 2020, and the postponement of other deadlines in light of the resetting of Section 341 meetings of creditors. *See*

---

[5] https://gov.georgia.gov/executive-action/executive-orders/2020-executive-orders(last visited May 16, 2020).

https://www.ganb.uscourts.gov/important-information-regarding-court-operations-during-covid-19-outbreak.

### 3.    Impact of COVID-19 and the Shelter Order

36.    KSD and the proposed Classes defined below have suffered an actual loss of Business Income due to the suspension of operations. In the case of KSD, it had been forced to almost entirely cease business activities.

37.    The presence of COVID-19 and the Shelter Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

38.    The suspension of Plaintiff's legal operation was caused by "direct physical loss of or physical damage to property" in the form of both a loss of access to the insured property for business purposes caused by COVID-19, and the Shelter Order and the actual damage in the form of the likely physical presence of COVID-19 on or within the property.

39.    COVID-19 and the Shelter Order also implicate the Civil Authority coverage, because access to the scheduled premises was specifically prohibited (to Plaintiff's clients) by order of a civil authority as the direct result of "RISKS OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premises from COVID-19.

40.     In addition, Plaintiff suffered an actual loss of Business Income due to direct physical loss or physical damage to the Bankruptcy Court (a Dependent Property). This physical loss or physical damage was caused by or resulted from a Covered Cause of Loss.

41.     The physical loss or physical damage at the Bankruptcy Court for the Northern District of Georgia (as evidenced by the Bankruptcy Orders) was due to the restrictions placed by the Shelter Order and COVID-19.

42.     Having suffered a loss covered by Defendants' insurance policy (under multiple coverages), Plaintiff submitted a claim to Defendants. Defendants denied Plaintiff's claim. *See* Exhibit B.

43.     Defendants based this denial primarily on:

   a.   The lack of "physical loss or damage caused by or resulting from a Covered Cause of Loss to property at a scheduled premises";

   b.   A purported lack of "information to indicate that a civil authority issued an order as a direct result of a covered cause of loss to property in the immediate area of the scheduled premises";

   c.   Professedly "no direct physical loss or damage caused by or resulting from a Covered Cause of Loss has occurred at a Dependent Property."

   d.   And a "pollution exclusion" that excludes losses "caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants and contaminants" under which pollution and contaminants are defined as "solid, liquid, gaseous or thermal irritant or contaminant[s] . . . ."

13

As summarized by Defendants:

> We have completed a review of your loss and have determined that since the coronavirus did not cause property damage at your place of business or in the immediate area, this loss is not covered.
>
> As we understand the facts, you are suffering from a loss of business income because you, or a business you depend on, have had to close or limit your business to help prevent the spread of COVID-19, the disease caused by the novel coronavirus.

44.    But none of these purported reasons are credible bases for Defendants' denial of Plaintiff's insurance claim.

45.    First, as described above, in the context of COVID-19 and/or the Shelter Order, there was a suspension of operations caused by "physical loss of or damage caused by or resulting from" a "Covered Cause of Loss" to property at a scheduled premise. The same is true at the Dependent Property. Plaintiff suffered an "actual loss of Business Income" "due to direct physical loss or physical damage at the premises of a dependent property" caused by or resulting from COVID-19 and/or the Shelter Order.

46.    Second, it strains credibility for Defendants to assert that they were unaware of the statewide Shelter Order that implicates the Civil Authority coverage.

47.    Third, a virus is *not* a solid, liquid, gaseous, or thermal irritant or contaminant and, therefore, does not implicate the pollution exclusion.

48.     The simple truth is that Defendants – without any investigation and in contravention of their contract – pre-determined their intent to deny coverage for the COVID-19 pandemic (and related civil authority orders), despite the complete absence, in the context of the Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority coverages of a virus or pandemic exclusion.

49.     Defendants, as sophisticated insurance companies, know how to exclude viruses when they want to and, in fact, have done so in other policies. Indeed, the Insurance Services Offices, Inc. ("ISO") developed a virus exclusion in the wake of the outbreak of Severe Acute Respiratory Syndrome or "SARS" in the early 2000s. Defendants' policy here does not contain any relevant exclusions for viruses even though such exclusions are now commonplace.

50.     In fact, the policy at issue includes an "Ordinance or Law" coverage provision –which is not implicated by this case – wherein Defendants excluded both "pollutants and contaminants" and "bacteria or virus" separately. *See* Exhibit A at A.5.j.(2). Comparatively, in the context of the Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority coverages, Defendants chose to only exclude "pollutants" and "contaminants," but not viruses.

51.    Boiled down to its essence, the subject matter of this case is simple. Defendants have, on a widespread and class-wide basis, refused to provide Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority coverage due to COVID-19 and the resultant executive orders by civil authorities that have required the suspension of business/practice *no matter* the language or scope of coverage in any particular insurance policy.

## CLASS ALLEGATIONS

52.    Plaintiff brings this action individually and on behalf of the following similarly situated classes (the "Classes") pursuant to Rule 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

53.    Plaintiff seeks to represent nationwide classes defined as follows:

### Business Income Breach Class

All persons and entities that: (a) had Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a suspension of their operations related to COVID-19 or the Shelter Order (or other civil authority order related to COVID-19) at (or impacting) the premises covered by their property insurance policy; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied coverage by Defendants.

### Extended Business Income Breach Class

All persons and entities that: (a) had Extended Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a suspension of their operations related to COVID-19 or the Shelter Order (or other civil authority order

related to COVID-19) at (or impacting) the premises covered by their property insurance policy; (c) suffered an actual loss of business income during the period when operations resumed; (d) made a claim under their property insurance policy issued by Defendants; and (d) were denied coverage by Defendants.

### Business Income from Dependent Properties Breach Class

All persons and entities that: (a) had Business Income from Dependent Properties coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a loss of Business Income related to COVID-19 or the Shelter Order (or other civil authority order related to COVID-19) at (or impacting) a Dependent Property; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Business Income coverage by Defendants.

### Civil Authority Breach Class

All persons and entities that: (a) had Civil Authority coverage under a property insurance policy without a virus exclusion issued by Defendants; (b) suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property; (c) made a claim under their property insurance policy issued by Defendants; and (d) were denied Civil Authority coverage by Defendants for the loss of Business Income.

54.    Plaintiff also seeks to represent nationwide declaratory judgment classes defined as follows:

### Business Income Declaratory Judgment Class

All persons and entities with Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a suspension of their operations related to COVID-19 or the Shelter Order (or other civil authority order related

to COVID-19) at (or impacting) the premises covered by their property insurance policy.

### Extended Business Income Declaratory Judgment Class

All persons and entities with Extended Business Income coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a suspension of their operations related to COVID-19 or the Shelter Order (or other civil authority order related to COVID-19) at (or impacting) the premises covered by their property insurance policy and suffered an actual loss of business income during the period when operations resumed.

### Business Income from Dependent Properties Declaratory Judgment Class

All persons and entities with Business Income from Dependent Properties coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a loss of Business Income related to COVID-19 or the Shelter Order (or other civil authority order related to COVID-19) at (or impacting) a Dependent Property.

### Civil Authority Declaratory Judgment Class

All persons and entities with Civil Authority coverage under a property insurance policy without a virus exclusion issued by Defendants that suffered a loss of Business Income caused by an order of a civil authority that specifically prohibited access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.[6]

55.    Excluded from the proposed Classes are Defendants, any parent

companies, subsidiaries, affiliates, officers, directors, legal representatives,

---

[6] The four Declaratory Judgment Classes together will be referred to as the "Declaratory Judgment Classes."

employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter, as well as members of their staff and immediate families. Also excluded from the Classes are insureds that have not complied with applicable provisions of their policies, such as the payment of premiums.

56.    Plaintiff reserves the right to amend the Class definitions above or add appropriate subclasses following discovery.

57.    This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Classes are easily ascertainable.

58.    The members in the proposed Classes are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the Classes in a single action will provide substantial benefits to the parties and the Court.

59.    This action involves common questions, which predominate over questions affecting individual members of the Classes, including (without limitation):

- whether members of the Classes suffered a Covered Cause of Loss based on the common policies issued by Defendants;

- whether COVID-19 (and/or an order of a civil authority related to COVID-19) constitutes a Covered Cause of Loss;

- whether Defendants' Business Income coverage and Extended Business Income coverage apply to a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19);

- whether a suspension of business operations caused by COVID-19 (and/or by an order of a civil authority related to COVID-19) qualifies as a suspension of business operations caused by direct physical loss of or physical damage to property;

- whether the loss of Business Income caused by COVID-19 (and/or by an order of a civil authority related to COVID-19) at a Dependent Property qualifies an insured for Business Income from Dependent Properties coverage.

- whether an order by a civil authority related to COVID-19 qualifies an insured for Civil Authority coverage;

- whether members of the Classes sustained damages as a result of Defendants denying their claims made under the common policies; and

- whether Defendants breached their contracts of insurance by denying Class members' claims related to COVID-19.

60.    Defendants engaged in a course of common conduct that gave rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Classes. Identical business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

61.     Plaintiff's claims are typical of those of the members of the Classes because they are based on the same underlying facts, events, and circumstances relating to Defendants' conduct, including the systematic denial of insurance coverage related to Business Income insurance and COVID-19.

62.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Class members, and has retained counsel competent and experienced in class action and consumer protection litigation.

63.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is small enough such that, absent representative litigation, it would be infeasible for many members of the Classes to redress the wrongs done to them. Moreover, individualized litigation would create potential for inconsistent judgments on identical issues and increase the delay and expense to the parties and the Court. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of adjudication by a single court.

64.     As a result of the foregoing, class treatment under Federal Rule of Civil Procedure 23(b)(3) is appropriate.

65.    Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(1). Plaintiff seeks class-wide adjudication related to Defendants' Business Income, Extended Business Income, Business Income from Dependent Properties, and Civil Authority coverages. The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent adjudications.

66.    Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(2). Defendants acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief.

## CLAIMS FOR RELIEF

### CLAIM I: BREACH OF CONTRACT--Business Income Coverage
### (Plaintiff Individually and on Behalf of the Business Income Breach Class)

67.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

68.    Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income Breach Class.

69.    Plaintiff's insurance policy, as well as those of the members of the Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

70.    The Special Property Coverage Form states that Defendants "will pay for the actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. . . The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises'…caused by or resulting from a Covered Cause of Loss."

71.    "Operations" is defined as "business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'"

72.    Suspension is defined (in relevant part) as "The partial slowdown or complete cessation of your business activities[.]"

73.    "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

74.    COVID-19, and/or orders of civil authority related to COVID-19 (like the Shelter Order) caused "direct physical loss of or damage to" the "Covered Property" under the Plaintiff's policy, and the policies of the other Business Income Breach Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension and reduction of operations during a period of restoration.

23

75.    Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Shelter Order) thus triggered the Business Income provision of Plaintiff's and the other members of the Business Income Breach Class' insurance policies.

76.    Plaintiff and the members of the Business Income Breach Class have complied with all applicable provisions of their policies.

77.    Plaintiff and the members of the Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

78.    Defendants have breached their coverage obligations under Plaintiff and the Business Income Breach Class Members' policies by denying coverage for any Business Income losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

79.    As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

**CLAIM II: BREACH OF CONTRACT--Extended Business Income Coverage**
**(Plaintiff Individually and on Behalf of the Extended Business Income**
**Breach Class)**

80.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

81.     Plaintiff brings this claim against Defendants individually and on behalf of the members of the Extended Business Income Breach Class.

82.     Plaintiff's insurance policy, as well as those of the members of the Extended Business Income Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Extended Business Income Breach Class Members' losses for claims covered by Defendants' all-risk policy.

83.     The Special Property Coverage Form includes Extended Business Income coverage, which is provided as follows:

> **r.  Extended Business Income**
>
> (1) If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:
>
> (a) Begins on the date property is actually repaired, rebuilt or replaced and "operations" are resumed; and

84.     "Operations" is defined as "business activities occurring at the 'scheduled premises' and tenantability of the 'scheduled premises.'"

85.     "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical

loss or physical damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

86.    COVID-19, and/or orders of civil authority related to COVID-19 (like the Shelter Order) caused "direct physical loss of or damage to" the "Covered Property" under the Plaintiff's policy, and the policies of the other Extended Business Income Breach Class members, by denying use of and damaging the Covered Property, and by causing a necessary suspension and reduction of operations during a period of restoration. Plaintiff and the other members of the Extended Business Income Class also suffered losses continuing once operations were resumed.

87.    Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Shelter Order) thus triggered the Extended Business Income provision of Plaintiff's and the other members of the Extended Business Income Breach Class' insurance policies.

88.    Plaintiff and the members of the Extended Business Income Breach Class have complied with all applicable provisions of their policies.

89.    Plaintiff and the members of the Business Income Breach Class made timely claims under their property insurance policies issued by Defendants.

90.    Defendants have breached their coverage obligations under Plaintiff and the Extended Business Income Breach Class Members' policies by denying coverage for losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

91.    As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the Extended Business Income Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

### CLAIM III: BREACH OF CONTRACT--Business Income from Dependent Properties Coverage
### (Plaintiff Individually and on Behalf of the Business Income from Dependent Properties Breach Class)

92.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

93.    Plaintiff brings this claim against Defendants individually and on behalf of the members of the Business Income from Dependent Properties Breach Class.

94.    Plaintiff's insurance policy, as well as those of the members of the Business Income from Dependent Properties Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Business Income from Dependent Properties Breach Class Members' losses for claims covered by Defendants' all-risk policy.

27

95.     The Special Property Coverage Form (and the relevant endorsements) includes Business Income from Dependent Properties coverage, which is provided as follows:

> s.  **Business Income from Dependent Properties**
>
>   (1) We will pay for the actual loss of Business Income you sustain due to direct physical loss or physical damage at the premises of a dependent property caused by or resulting from a Covered Cause of Loss.

96.     "Business Income" is defined as "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no direct physical loss or physical damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."

97.     COVID-19, and/or orders of civil authority related to COVID-19 (like the Shelter Order) caused Plaintiff and the other Business Income from Dependent Properties Breach Class Members' loss of Business Income due to "direct physical loss or physical damage" at the dependent property.

98.     Losses caused by COVID-19, and/or orders of civil authority related to COVID-19 (like the Shelter Order) thus triggered the Business Income from

28

Dependent Properties coverage provision of Plaintiff's and the other members of the Business Income from Dependent Properties Breach Class' insurance policies.

99.    Plaintiff and the members of the Business Income from Dependent Properties Breach Class have complied with all applicable provisions of their policies.

100.    Plaintiff and the members of the Business Income from Dependent Properties Breach Class made timely claims under their property insurance policies issued by Defendants.

101.    Defendants have breached their coverage obligations under Plaintiff and the other Business Income from Dependent Properties Breach Class Members' policies by denying coverage for losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

102.    As a direct and proximate result of Defendants' breaches, Plaintiff and the members of the other Business Income from Dependent Properties Breach Class Breach Class have sustained damages for which Defendants are liable, in an amount to be established at trial.

## CLAIM IV: BREACH OF CONTRACT--Civil Authority Coverage
### (Plaintiff Individually and on Behalf of the Civil Authority Breach Class)

103.    Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

104.   Plaintiff brings this claim against Defendants individually and on behalf of the members of the Civil Authority Breach Class.

105.   Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class, are contracts under which premiums were paid to Defendants in exchange for promises to pay Plaintiff and the Civil Authority Breach Class Members' losses for claims covered by the policy.

106.   Plaintiff's policy, as well as those of the members of the Civil Authority Breach Class are extended to apply to losses "sustain[ed] when access to your 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of your 'scheduled premises.'"

107.   COVID-19 caused the Governor of the state of Georgia to issue the Shelter Order, which specifically prohibited certain access to Plaintiff and the Civil Authority Breach Class Members' scheduled premises based on "RISKS OF DIRECT PHYSICAL LOSS" to property in the immediate area of the scheduled premise.

108. Losses caused by COVID-19 thus triggered the Civil Authority provision of Plaintiff and the Civil Authority Breach Class Members' insurance policies.

109.   Plaintiff and the Civil Authority Breach Class Members have complied with all applicable provisions of their policies.

110.   Plaintiff and the Civil Authority Breach Class Members made timely claims under their property insurance policies issued by Defendants.

111.   Defendants have breached their coverage obligations under Plaintiff and the Civil Authority Breach Class Members' policies by denying coverage for any Civil Authority losses incurred in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

112.   As a direct and proximate result of Defendants' breaches, Plaintiff and the Civil Authority Breach Class Members have sustained damages for which Defendants are liable, in an amount to be established at trial.

## CLAIM V: DECLARATORY JUDGMENT
### (Claim Brought on Behalf of the Declaratory Judgment Classes)

113.   Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

114.   Plaintiff brings this claim against Defendants individually and on behalf of the members of the Declaratory Judgment Classes.

115.   Plaintiff's policy, as well as those of the members of the Declaratory Judgment Classes, are contracts under which premiums were paid to Defendants in exchange for promises to pay losses for claims covered by their insurance policies.

31

116.   Plaintiff and the members of the Declaratory Judgment Classes have complied with all applicable provisions of the policies.

117.   Defendants have denied claims related COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order) on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Declaratory Judgment Classes have filed a claim.

118.   An actual case or controversy exists regarding Plaintiff and the Declaratory Judgment Class Members' rights and Defendants' obligations under the policies to provide reimbursements for the full amount of losses incurred by Plaintiff and the Declaratory Judgment Classes Members in connection with the COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

119.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

> a. Plaintiff and the Business Income Declaratory Judgment Class Members' Business Income losses incurred in connection with necessary interruption of their businesses at their insured property due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order) are insured losses under their policies; and

    b.  Defendants are obligated to pay Plaintiff and the Business Income Declaratory Judgment Class Members for the full amount of the Business Income losses incurred in connection with the period of restoration and the necessary interruption of their businesses at their insured property stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

120.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the Extended Business Income Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    a.  Plaintiff and the Extended Business Income Declaratory Judgment Class Members' loss of business income during the period when operations resumed incurred in connection with the necessary interruption of their businesses at their insured property due to the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order) are insured losses under their policies; and

    b.  Defendants are obligated to pay Plaintiff and the Extended Business Income Declaratory Judgment Class Members for the loss of business income during the period when operations resumed incurred and to be incurred in connection with the necessary interruption of their businesses at their insured property stemming from the presence of COVID-19 and/or orders of civil authority related to COVID-19 (like the Shelter Order).

121.   Pursuant to 28 U.S.C. § 2201, Plaintiff and the Business Income from Dependent Properties Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

    c.  Plaintiff and the Business Income from Dependent Properties Declaratory Judgment Class Members' loss of business income

related to COVID-19 or the Shelter Order (or other civil authority order or other civil authority order related to COVID-19) at (or impacting) a Dependent Property are insured losses under their policies; and

a. Defendants are obligated to pay Plaintiff and the Business Income from Dependent Properties Declaratory Judgment Class Members for the amount of loss of business income incurred in connection with COVID-19 or the Shelter Order (or other civil authority order or other civil authority order related to COVID-19) at (or impacting) a Dependent Property.

122. Pursuant to 28 U.S.C. § 2201, Plaintiff and the Civil Authority Declaratory Judgment Class Members seek a declaratory judgment from this Court declaring the following:

a. Plaintiff and the Civil Authority Declaratory Judgment Class Members' Business Income losses caused by an order of a civil authority that specifically prohibited certain access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property are insured losses under their policies; and

b. Defendants are obligated to pay Plaintiff and the Civil Authority Declaratory Judgment Class for the amount of the Business Income losses incurred and to be incurred caused by an order of a civil authority that specifically prohibited certain access to the premises covered by their property insurance policy as the direct result of the risks caused by COVID-19 to property in the immediate area of the insureds covered property.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants as follows:

i.      Entering an order certifying each of the proposed Classes;

ii.     Entering an order designating Plaintiff as Class Representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

iii.    Entering judgment on Counts I-IV in favor of Plaintiff, the Business Income Breach Class, Extended Income Breach Class, Business Income from Dependent Properties Breach Class, and the Civil Authority Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

iv.     Entering declaratory judgments on Count V in favor of Plaintiff and the Declaratory Judgment Classes (as set forth in Count V);

v.      Ordering Defendants to pay both pre- and post-judgment interest on any amounts awarded;

vi.     Ordering Defendants to pay reasonable attorneys' fees and costs of suit; and

vii.    Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

*Signature on following page*

Date:  May 21, 2020

Respectfully submitted,

**GREG COLEMAN LAW PC**

*/s/ Rachel Soffin*
Rachel Soffin (GA Bar No. 255074)
William A. Ladnier*
Jonathan B. Cohen*
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rachel@gregcolemanlaw.com
will@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

Alex R. Straus*
**GREG COLEMAN LAW PC**
16748 McCormick Street
Los Angeles, CA 91436
T: 917-471-1894
alex@gregcolemanlaw.com

Shanon J. Carson*
**BERGER MONTAGUE PC**
1818 Market Street
Suite 3600
Philadelphia, PA 19103
T: 215-875-4656
scarson@bm.net

John G. Albanese*
**BERGER MONTAGUE PC**
43 SE Main Street, Suite 505
Minneapolis, MN 55414
T: 612.594.5999
F: 612.584.4470
jalbanese@bm.net

Daniel K. Bryson*
Patrick M. Wallace*
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27605
T: 919-600-5000
F: 919-600-5035
dan@whitfieldbryson.com
pat@whitfieldbryson.com

*pro hac vice forthcoming*

***Attorneys for Plaintiff and the proposed Classes***